UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JOSE L. ECHAVARRIA, | Case No. 3:98-cv-00202-MMD-VPC |
| Petitioner, | ORDER |
| v. | |
| RENEE BAKER, *et al.*, | |
| Respondents. | |

I.     **INTRODUCTION**

This action is a petition for a writ of habeas corpus by Jose L. Echavarria, a Nevada prisoner sentenced to death. There are before the Court a motion by respondents to dismiss Echavarria's second amended habeas corpus petition, as well as motions by Echavarria for leave to conduct discovery and for an evidentiary hearing. In this order, the Court resolves those three motions, granting respondents' motion to dismiss in part and denying it in part, and denying Echavarria's motions for leave to conduct discovery and for an evidentiary hearing.

II.    **BACKGROUND FACTS AND PROCEDURAL HISTORY**

The following is the statement of facts and procedural history, as set forth by the Nevada Supreme Court in its 1992 opinion on the direct appeal of Echavarria and his co-defendant, Carlos Alfredo Gurry:

On the morning of June 25, 1990, Jose Lorrente Echavarria, disguised as a woman and wearing a gauze pad on his cheek and a cast or sling on his arm, entered a Las Vegas branch of the Security Pacific Bank with the intention of robbing it. Echavarria previously had surveyed the bank and determined that no security guards were employed there. When Echavarria approached a bank teller and eventually pointed a gun at her, the teller screamed and jumped back from the counter, causing Echavarria to abandon his holdup attempt and start walking towards the exit door of the bank.

FBI Special Agent John Bailey, who happened to be at the bank on Bureau business at the time of the incident, inquired about the commotion. Upon learning that Echavarria had pulled a gun on a bank teller, Bailey turned to follow Echavarria, pulled out his gun, and yelled something akin to "halt, this is the FBI." Echavarria turned, glanced at Bailey, and continued to walk towards the exit. Bailey then fired a shot that shattered the bank's glass front door. Echavarria stopped. Bailey grabbed the gunman, held him against the wall, and ordered him to drop his gun, which Echavarria eventually did.

Acting swiftly, Agent Bailey frisked Echavarria, requested that someone call the FBI office, and asked a bank employee to retrieve his handcuffs from his car. Bailey seated Echavarria in a chair while he waited for the handcuffs. The bank employee returned with the cuffs, but before Bailey could shackle Echavarria, he jumped out of the chair and collided with Bailey. During the ensuing scuffle, Bailey fell to the ground and Echavarria, retrieving his own gun, fired several shots at the downed agent. Echavarria then ran from the bank. Bailey was transported to a hospital, where he succumbed to three gunshot wounds.

The trial evidence supported the State's theory that after exiting the bank, Echavarria ran to his blue Firebird where the getaway driver, Carlos Alfredo Gurry, was waiting and the two sped away. A police officer who arrived at the crime scene shortly after Echavarria had fled discovered a motorcycle in the handicap parking space outside the bank. An investigation of the vehicle identification number on the motorcycle revealed Echavarria as the owner. A DMV check disclosed that the license plate attached to the motorcycle belonged to another vehicle. The rightful owner of the license plate identified Gurry as the person he had seen lurking around his motorcycle on two mornings shortly before the bank incident. Testing revealed Gurry's fingerprints on the stolen plate.

Information from a wallet which Bailey had removed from Echavarria during the frisk quickly led investigators to the apartment shared by Echavarria and Gurry. The license plate belonging to Echavarria's motorcycle and a screwdriver were found on the walkway in front of the apartment. Inside the apartment, clothes were strewn about the living room floor. In a dumpster outside the apartment police found a Security Pacific Bank Visa credit card application with both Echavarria's and Gurry's fingerprints on it, and a business card with C. Williams Costume Shop written on the back. When questioned, clerks at the costume shop remembered two Hispanic men who came into the store a few days before the attempted robbery and looked at afro wigs and arm casts, although they could not remember if the men purchased anything.

2

Gurry was arrested when he returned to his apartment the afternoon of the incident. Initially, Gurry stated that he had been at a friend's house working on a car since 9:00 a.m. Later, Gurry told the FBI that he was scared and had lied about his first story. Gurry stated that he had actually borrowed Echavarria's car on the morning of June 25, 1990, to take care of an immigration problem and some errands, and that he thereafter spent the remainder of the morning at the apartment. Gurry reported that Echavarria, looking desperate, came into the apartment about noon, changed clothes and left in a hurry. Gurry said that Echavarria's behavior frightened him, so he called a friend to pick him up. Gurry allegedly stayed about half an hour at the friend's house, then returned home.

Meanwhile, Echavarria headed south in his blue Firebird, arriving at the home of a former girlfriend in Juarez, Mexico, in the early morning of June 26, 1990. Echavarria convinced the former girlfriend, Maria Garcia, to give him six hundred dollars before leaving. Echavarria next contacted Maria's brother, Jorge Garcia, for help. Jorge bought an airline ticket for Echavarria and took him to the airport. At Echavarria's request, Jorge also buried two guns and abandoned the blue Firebird along the highway. [Footnote: The guns were later recovered by the Mexican authorities and turned over to the FBI. One of the guns fired the bullets which killed Agent Bailey. The other had been purchased by Gurry from a co-worker in late May, 1990. The Firebird was also recovered and searched, revealing the fingerprints of Echavarria and Gurry, and fragments of glass consistent with the glass in the bank door.]

The Juarez police arrested Echavarria at the airport at about 8:30 p.m. on June 26, 1990. The next morning, Echavarria signed a written statement confessing to the murder of Agent Bailey. Echavarria was turned over to the FBI after his confession, and subsequently returned to the United States.

Echavarria and Gurry were each indicted on five counts: first-degree murder with the use of a deadly weapon, burglary, attempted robbery, escape and conspiracy. The State had to conduct a second grand jury to indict Gurry because the district court found that the evidence against Gurry in the first grand jury was insufficient and the prosecutor had misled the grand jury and failed to present exculpatory evidence.

Before trial, Echavarria moved to suppress his Juarez confession on the grounds that he had confessed after being subjected to physical torture and abuse while in the custody of the Mexican authorities. After a two-day evidentiary hearing, the motion was denied.

Trial commenced on March 15, 1991, and the guilt phase concluded with jury verdicts of guilty on all counts against Echavarria. Gurry was found guilty of all counts except the escape charge, which the district court had dismissed for lack of evidence.

After the penalty phase of the trial, the jury found three aggravating circumstances relating to the murder committed by Echavarria and sentenced him to death. The jury found four mitigating circumstances in favor of Gurry and sentenced him to life in prison with the possibility of parole. [Footnote: Gurry received a second life term as a deadly weapon

enhancement.] The district court also sentenced each appellant to additional prison time for the other felonies. Appellants' motion for a new trial was denied.

*Echavarria v. State*, 108 Nev. 734, 737-39, 839 P.2d 589, 591-93 (1992). The Nevada Supreme Court affirmed Echavarria's conviction and sentence. *Id.* The United States Supreme Court denied certiorari on May 17, 1993. *Echavarria v. Nevada*, 508 U.S. 914 (1993).

Echavarria then filed his first state-court habeas corpus petition, on July 28, 1995. Exhibit 119.[1] That petition was denied by the state district court in an order entered on November 7, 1995. Exhibit 122. Echavarria appealed. *See* Exhibits 127 (opening brief) and 129 (reply brief). The appeal was dismissed on December 20, 1996. Exhibit 130. Rehearing was denied on December 17, 1997. Exhibit 132.

Echavarria then initiated this federal habeas corpus action on April 17, 1998, by filing a pro se habeas petition (dkt. no. 1). On May 1, 1998, the court appointed counsel – the Federal Public Defender for the District of Nevada – to represent Echavarria (dkt. nos. 3, 8, 9). Extensive discovery proceedings ensued, with petitioner granted leave of court to conduct certain discovery (*see, e.g.*, dkt. nos. 17, 47, 49, 68). On October 16, 2006, Echavarria filed a first amended habeas petition (dkt. nos. 107 and 108).

On March 26, 2007, upon an unopposed motion by Echavarria, the court stayed this case, to allow Echavarria to return to state court to exhaust his unexhausted claims (dkt. no. 118). The stay of this action was lifted on July 12, 2011, upon a motion by Echavarria, after the state-court proceedings had been completed (dkt. no. 133). On November 18, 2011, Echavarria filed a second amended petition for writ of habeas corpus (dkt. nos. 136 and 139).

Meanwhile, during the stay of this action Echavarria initiated two habeas corpus actions in state court. He initiated one of those – his second state-court habeas action –

---

[1]In this order, exhibits identified only by exhibit number, without further designation ("Exhibit ___"), are located in the "State Court Record," filed by the respondents on March 1, 1999, in support of an opposition to a motion for leave to conduct discovery, which is found in the court's electronic filing system at dkt. no. 23.

4

on May 10, 2007, and that was denied by the state district court on January 8, 2008.  He initiated the other – his third state-court habeas action – on May 2, 2008, and that was denied by the state district court on August 1, 2008.  *See* Appellant's Opening Brief, Exhibit 1 to Motion to Vacate Stay and Reopen Capital Habeas Corpus Proceeding, p. 1, lines 6-12 (dkt. no. 132-2, p. 14).   Echavarria appealed from the denial of those two petitions, and the appeals were consolidated.  *Id.*  On July 20, 2010, the Nevada Supreme Court affirmed the denial of Echavarria's second and third state-court habeas petitions.  Order of Affirmance, Exhibit 6 to Motion to Vacate Stay and Reopen Capital Habeas Corpus Proceeding (dkt. no. 132-5, pp. 38-57).   Rehearing was denied on September 22, 2010.  Order Denying Rehearing, Exhibit 8 to Motion to Vacate Stay and Reopen Capital Habeas Corpus Proceeding (dkt. no. 132-5, pp. 67-69).  The United States Supreme Court denied certiorari on April 4, 2011.  Exhibit 11 to Motion to Vacate Stay and Reopen Capital Habeas Corpus Proceeding (dkt. no. 132-6, p. 17).   The Nevada Supreme Court issued its remittitur on May 17, 2011.  Remittitur, Exhibit 12 to Motion to Vacate Stay and Reopen Capital Habeas Corpus Proceeding (dkt. no. 132-6, p. 19).

On May 8, 2012, respondents filed their motion to dismiss Echavarria's second amended petition (dkt. no. 145).  On September 9, 2012, Echavarria filed an opposition to the motion to dismiss (dkt. no. 152), along with a motion for leave to conduct discovery (dkt. no. 157) and a motion for evidentiary hearing (dkt. no. 158).  On November 28, 2012, respondents filed a reply in support of their motion to dismiss (dkt. no. 166), an opposition to the motion for leave to conduct discovery (dkt. no. 167), and an opposition to the motion for evidentiary hearing (dkt. no. 168).  On January 22, 2013, Echavarria filed a reply in support of his motion for leave to conduct discovery (dkt. no. 172) and a reply in support of his motion for evidentiary hearing (dkt. no. 173).

Respondents' motion to dismiss, Echavarria's motion for leave to conduct discovery, and Echavarria's motion for evidentiary hearing are before the Court.

///

1    III.    **ECHAVARRIA'S SECOND AMENDED HABEAS PETITION**

2           In his second amended habeas corpus petition, filed November 18, 2011 (dkt. nos.

3    136 and 139), Echavarria asserts fifteen claims for relief, as follows:

4           In Claim 1, Echavarria claims that his constitutional rights were denied because of

5    ineffective assistance of counsel.  Second Amended Petition (dkt. no. 136, p. 9).  Claim 1

6    is divided into subparts.  In Claim 1A, Echavarria claims that trial counsel's investigation

7    of the crime scene was inadequate.  *Id.* at 9-13.  In Claim 1B, Echavarria claims that his

8    trial counsel conducted an inadequate mitigation investigation.  *Id.* at 13-52.

9           In Claim 2, Echavarria claims that his constitutional rights were denied because

10   the aggravating factors, upon which his death penalty was based, were invalid.  *Id.* at 53-

11   58.  In particular, Echavarria claims that the "aggravator, murder committed to avoid or

12   prevent a lawful arrest, is invalid and cannot be used to support the death penalty."  *Id.* at

13   53.

14          In Claim 3, Echavarria claims that his constitutional rights were denied "due to the

15   trial court's failure to suppress Mr. Echavarria's statement given to the Mexican police

16   while being subjected to torture."  *Id.* at 59.

17          In Claim 4, which is filed under seal (dkt. no. 139), Echavarria claims that his

18   constitutional rights were denied because of bias on the part of the trial judge.

19          In Claim 5, Echavarria claims that his constitutional rights were denied because

20   "the prosecutor exercised his peremptory challenges in a discriminatory manner and

21   appellate counsel ineffectively failed to raise this issue on direct appeal and state post-

22   conviction."  *Id.* at 65

23          In Claim 6, Echavarria claims that his constitutional rights were denied because

24   "the government withheld material, exculpatory evidence or, in the alternative, trial

25   counsel unreasonably and ineffectively failed to investigate and discover this evidence."

26   *Id.* at 70.

27   ///

28   ///

In Claim 7, Echavarria claims that his constitutional rights were denied because a jury instruction "relieved the State of its burden of proof as to all the elements of first degree murder." *Id.* at 86.

In Claim 8, Echavarria claims that his constitutional rights were denied because "the 'officially sworn' court interpreters interpreted inaccurately on matters critical to proof" and because "[d]efense counsel rendered ineffective assistance at all stages of the proceedings for failing to protect petitioner's right to an accurate interpretation and to preserve these issues for review." *Id.* at 90.

In Claim 9, Echavarria claims that his constitutional rights were denied "because the trial court denied trial counsel the opportunity to investigate allegations of juror misconduct and trial counsel unreasonably failed to investigate those allegations." *Id* at 97.

In Claim 10, Echavarria claims that his constitutional rights were denied "because the government presented evidence that it knew or should have known was false and suppressed exculpatory evidence." *Id.* at 107.

In Claim 11, Echavarria claims that his constitutional rights were denied because of prosecutorial misconduct. *Id.* at 112-13.

In Claim 12, Echavarria claims that his "death sentence is invalid because the anti-sympathy instruction given at the penalty phase violated his federal constitutional right to due process, equal protection, a reliable sentence, and effective assistance of counsel by unconstitutionally limiting the jury's ability to give effect to mitigating evidence." *Id.* at 114.

In Claim 13, Echavarria claims that his constitutional rights were denied "because the Nevada capital punishment system operates in an arbitrary and capricious manner." *Id.* at 116.

In Claim 14, Echavarria claims that his "death sentence is invalid under the state and federal constitutional guarantees of due process, equal protection, and a reliable ///

sentence because execution by lethal injection violates the constitutional prohibition against cruel and unusual punishments." *Id.* at 119.

In Claim 15, Echavarria claims that his "conviction and death sentence are invalid under the [state and federal] constitutional guarantees of due process, equal protection, effective assistance of counsel, a fair tribunal, an impartial jury, and a reliable sentence due to the cumulative errors in the jury instructions, gross misconduct by government officials and witnesses, and the systematic deprivation of Mr. Echavarria's right to the effective assistance of counsel." *Id.* at 133.

## IV.   STATUTE OF LIMITATIONS

### A.   Legal Standards

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), there is a one-year statute of limitations applicable to federal habeas corpus petitions.  The statute provides:

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A-D).

The habeas petitioner is entitled to statutory tolling of the limitations period while a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).

The AEDPA limitations period is also subject to equitable tolling. *Holland v. Florida*, ___ U.S. ___, 130 S.Ct. 2549, 2562, 177 L.Ed.2d 130, 145 (2010). A petitioner may be entitled to equitable tolling if he can show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 130 S.Ct. at 2562 (*quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Respondents argue that Claims 1, 5, 6, 7, 8, 10, 13, and 14 of Echavarria's second amended petition are barred by the statute of limitations and should be dismissed.

### B.    Expiration of the One-Year Limitations Period

Echavarria's conviction became final before AEDPA became effective on April 24, 1996. *See Echavarria v. Nevada*, 508 U.S. 914 (1993) (United States Supreme Court's denial of certiorari, following Echavarria's direct appeal, on May 17 1993). For such a petitioner, with a conviction that became final prior to the effective date of AEDPA, the one-year limitations period for the petitioner's federal habeas claims began to run, in the absence of any applicable tolling, on the effective date of AEDPA, April 24, 1996. *See Patterson v. Stewart*, 251 F.3d 1243, 1245-46 (9th Cir. 2001).[2]

When AEDPA went into effect on April 24, 1996, however, Echavarria had a habeas petition pending in state court. Echavarria's first state-court habeas petition was denied by the state district court in an order entered November 7, 1995. Exhibit 122. His appeal from that ruling was dismissed December 20, 1996 (*see* Exhibit 130), and rehearing was denied December 17, 1997 (*see* Exhibit 132). Under 28 U.S.C. § 2244(d)(2), the AEDPA limitations period was tolled while Echavarria's first state-court habeas action was pending – that is, until the Nevada Supreme Court denied rehearing on December 17, 1997. *See White v. Klitzkie,* 281 F.3d 920, 924-25 (9th Cir. 2002) (on the question when statutory tolling, under section 2244(d)(2), ends).

---

[2]There is no argument by Echavarria that any of the other triggering dates, in subsections (d)(1)(B), (C), or (D) of 28 U.S.C. § 2254, is applicable.

Echavarria filed his original habeas petition in this federal action on April 17, 1998 (dkt. no. 1).  The claims in that petition, as well as claims in later amended petitions that relate back to claims in that petition, were timely filed; respondents appear to concede as much.  On the other hand, Echavarria's first amended habeas petition, filed October 16, 2006 (dkt. nos. 107 and 108), and his second amended habeas petition, filed November 18, 2011 (dkt. nos. 136 and 139), were filed after the expiration of the limitations period, and the claims in those amended petitions are barred by the statute of limitations, unless the claims relate back to claims in the original petition, or unless there is equitable tolling.

## C.    Relation Back

Claims in an amended petition for writ of habeas corpus relate back to the original petition, under Federal Rule of Civil Procedure 15(c), if they arise out of "a common 'core of operative facts' uniting the original and newly asserted claims."  *Mayle v. Felix*, 545 U.S. 644, 659 (2005).  "An amended habeas petition ... does not relate back ... when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  *Id.* at 650.

Echavarria argues that Claim 7 of his second amended habeas petition relates back to Claim 2 in his original 1998 petition.  *See* Opposition to Motion to Dismiss (dkt. no. 152), pp. 4-6.  Claim 7 is Echavarria's claim that his constitutional rights were denied because a jury instruction "relieved the State of its burden of proof as to all the elements of first degree murder."  Second Amended Petition, p. 86.  In Claim 2 of Echavarria's original 1998 petition, he claimed:  "At the guilt phase of trial, the state trial court refused to instruct the jury adequately on necessary elements of each of the theories of first degree murder asserted by the state."  Petition for Writ of Habeas Corpus (dkt. no. 1), p. 13, lines 13-15.  And, in Claim 2 of Echavarria's original 1998 petition, he also claimed:  "The court refused to give an instruction defining the deliberation element of first degree premeditated and deliberated murder, and the instruction on premeditation and deliberation erased any rational distinction between first and second degree murder."  *Id.*, p. 13, lines 22-25.  The Court finds that Claim 7 of the second amended petition and

Claim 2 of the original 1998 petition arise out of a common core of operative facts, and Claim 7 relates back to the 1998 petition, within the meaning of Rule 15(c) and the Supreme Court's *Mayle* decision.   Claim 7, therefore, is not barred by the statute of limitations.

Echavarria does not, however, make any argument that any of Claims 1, 5, 6, 8, 10, 13, or 14 relates back to his original 1998 petition, within the meaning of Rule 15(c) and *Mayle*.   *See* Opposition to Motion to Dismiss, pp. 4-6.   Moreover, the Court has examined those claims, and has compared them to the claims in the original 1998 petition, and the Court finds that they do not relate back to any claims in the 1998 petition.

Claims 1, 5, 6, 8, 10, 13, and 14 of the second amended petition were therefore filed outside the applicable one-year limitations period, and, absent equitable tolling, are barred by the statute of limitations.

### D.   Equitable Tolling

Echavarria argues that he is entitled to equitable tolling of the statute of limitations because the "proceedings leading up to the filing of the amended petition in 2006 were conducted under the supervision of this Court and in conformity with the Standard Orders adopted by the Court for the conduct of habeas corpus proceedings in capital cases." Opposition to Motion to Dismiss, p. 6, lines 24-27.   As the Court understands Echavarria's argument, he asserts that during the time his counsel did investigation and conducted discovery with the intention of eventually amending his petition, because counsel did so "under the supervision" of the court and in conformance with the court's scheduling orders, he should not be subject to the operation of the statute of limitations. Echavarria appears to argue that he was somehow misled to believe that his amendment of the petition, whenever accomplished, would automatically be in compliance with the statute of limitations.

Equitable tolling is warranted only if a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his

way and prevented timely filing." *Holland*, 130 S.Ct. at 2562 (internal quotation marks omitted); *see also Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009) ("The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness . . . and that the extraordinary circumstances made it impossible to file a petition on time." (internal quotations, citations, and alteration omitted)). "The high threshold of extraordinary circumstances is necessary 'lest the exceptions swallow the rule.'" *Lakey v. Hickman*, 633 F.3d 782, 786 (9th Cir. 2011), *quoting Mendoza v. Carey*, 449 F.3d 1065, 1068 (9th Cir. 2006).

Taking as true all the factual allegations made by Echavarria in opposition to the motion to dismiss, the Court finds that Echavarria fails to make a showing on either prong – that an extraordinary circumstance stood in the way of the filing of his amended petition, or that he pursued his rights diligently.

Instructions from a court do not serve as a basis for equitable tolling unless the court "affirmatively misled" the petitioner. *Ford v. Pliler*, 590 F.3d 782, 786-87 (9th Cir. 2009). There is no showing by Echavarria that he was affirmatively misled by the court. The court's orders during the time in question granted leave for Echavarria to conduct discovery, set time limits for Echavarria to do investigation and conduct discovery, and set time limits for Echavarria to file an amended petition; those orders were not meant to, and plainly did not purport to, make any statement about, or have any bearing on, the operation of the statute of limitations. Echavarria has not made any factual allegation, or proffered any evidence, suggesting otherwise.

Moreover, to the extent that Echavarria's counsel now argue that equitable tolling must be granted because of their own failure to recognize that their delay from 1998 to 2006 in filing the first amended petition would run afoul of the statute of limitations (*see* Opposition to Motion to Dismiss, pp. 20-21), that argument is without merit. A petitioner is not entitled to equitable tolling when his untimeliness is attributable to his own "oversight, miscalculation or negligence." *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (internal quotations, citation, and alteration omitted). And, a

petitioner is not entitled to equitable tolling where the cause of his late filing is incorrect advice from counsel.  *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) ("We conclude that the miscalculation of the limitations period by . . . counsel and his negligence in general do not constitute extraordinary circumstances sufficient to warrant equitable tolling.").  There is no indication in this case of the sort of "egregious misconduct" on the part of counsel, with regard to the running of the statute of limitations, that could warrant equitable tolling.  *See Spitsyn v. Moore*, 345 F.3d 796, 800-02 (9th Cir. 2003) (equitable tolling warranted where attorney retained to prepare and file habeas petition, failed to do so, and disregarded requests to return files until well after the date the petition was due).

Neither the court's supervision or scheduling orders, nor the performance of Echavarria's counsel, was an extraordinary circumstance that prevented timely filing of Echavarria's amended petition.

Furthermore, in the Court's view, the record shows that Echavarria did not act diligently in filing the amended petition.  The United States Supreme Court issued *Mayle v. Felix*, 545 U.S. 644 (2005), on June 23, 2005.  In *Mayle*, the Court held that an amended habeas petition does not relate back when it asserts a new ground for relief supported by facts that differ in both time and type from those set forth in the original pleading.  *Mayle*, 545 U.S. at 650.  However, despite the obvious import of the *Mayle* decision, Echavarria still did not file his first amended habeas petition until October 16, 2006, which was more than fifteen (15) months after *Mayle* was decided.  That period of time, in itself, is in excess of the one-year limitations period applicable under 28 U.S.C. § 2244(d).  In the Court's view, the delay by Echavarria after *Mayle* was decided evidences a lack of diligence.

Taking the factual allegations in his opposition to the motion to dismiss as true, Echavarria has not shown that any extraordinary circumstance stood in his way and prevented timely filing of his first amended petition, and he has not shown that he has ///

pursued his rights diligently.  *See Holland*, 130 S.Ct. at 2562.  Equitable tolling is not warranted.

In his motion for evidentiary hearing, Echavarria requests an evidentiary hearing "to establish that he is entitled to equitable tolling to overcome the state's assertion of a statute of limitations defense."  Motion for an Evidentiary Hearing (dkt. no. 158, p. 3, lines 13-14).

Because Echavarria seeks an evidentiary hearing on a procedural issue, the restrictions imposed by 28 U.S.C. § 2254(e)(2) do not necessarily apply to his request. Even so, in order to be entitled to an evidentiary hearing, Echavarria must allege facts which, if true, would entitle him to relief.  *See, e.g., Mendoza v. Carey*, 449 F.3d 1065, 1071 (9th Cir.2006).  "If the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *West v. Ryan*, 608 F.3d 477, 485 (9th Cir. 2010) (internal quotations omitted).  In analyzing Echavarria's argument that he should be granted equitable tolling, the Court accepts his allegations, and the evidence he has proffered, at face value, and nonetheless determines that equitable tolling is unwarranted.  Thus, the Court declines to grant Echavarria an evidentiary hearing on the issue of equitable tolling.

Claims 1, 5, 6, 8, 10, 13, and 14[3] of Echavarria's second amended petition are therefore barred by the statute of limitations, and subject to dismissal on that ground.

## V.    PROCEDURAL DEFAULT

### A.    Legal Standards

In *Coleman v. Thompson*, the Supreme Court held that a state prisoner's failure to comply with the state's procedural requirements in presenting his claims is barred from obtaining a writ of habeas corpus in federal court by the adequate and independent state ground doctrine.  *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991) ("Just as in those

---

[3]As Claim 14 is dismissed on statute of limitations grounds, the Court declines to reach the question of the cognizability and ripeness of that claim.  *See* Motion to Dismiss, p. 18; Reply in Support of Motion to Dismiss, pp. 32-34.

1    cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who

2    has failed to meet the State's procedural requirements for presenting his federal claims

3    has deprived the state courts of an opportunity to address those claims in the first

4    instance").  Where such a procedural default constitutes an adequate and independent

5    state ground for denial of habeas corpus, the default may be excused only if "a

6    constitutional violation has probably resulted in the conviction of one who is actually

7    innocent," or if the prisoner demonstrates cause for the default and prejudice resulting

8    from it.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

9        To demonstrate cause for a procedural default, the petitioner must "show that

10   some objective factor external to the defense impeded" his efforts to comply with the

11   state procedural rule.    *Murray*, 477 U.S. at 488.  For cause to exist, the external

12   impediment must have prevented the petitioner from raising the claim.  *See McCleskey v.*

13   *Zant*, 499 U.S. 467, 497 (1991).  With respect to the prejudice prong, the petitioner bears

14   "the burden of showing not merely that the errors [complained of] constituted a possibility

15   of prejudice, but that they worked to his actual and substantial disadvantage, infecting his

16   entire [proceeding] with errors of constitutional dimension."   *White v. Lewis*, 874 F.2d

17   599, 603 (9th Cir. 1989), *citing United States v. Frady*, 456 U.S. 152, 170 (1982).

18       In their motion to dismiss, respondents assert that Claims 1, 2, 5, 6, 8, 9, 10, and

19   15 of Echavarria's second amended petition are procedurally defaulted and should be

20   dismissed on that ground.

21       **B.    The Procedural Default**

22       In his second state-court habeas petition, Echavarria "presented all of the claims in

23   his amended federal petition, albeit in a slightly different order."  Motion to Dismiss, p. 9,

24   lines 21-22.  On the appeal from the denial of that petition, the Nevada Supreme Court

25   affirmed, finding that the state district court properly "[denied] his claims of ineffective

26   assistance of trial, appellate, and post-conviction counsel as procedurally barred," under

27   Nevada Revised Statutes ("NRS") § 34.726 (statute of limitations), § 34.800 (laches), and

28   ///

§ 34.810 (successive petitions).  Order of Affirmance, Exhibit 6 to Motion to Vacate Stay and Reopen Capital Habeas Corpus Proceeding (dkt. no. 132-5, pp. 38-57, pp. 2-11).

Respondents' position in their motion to dismiss, with respect to the procedural default, is overbroad in three respects.  First, with respect to Claims 1, 5, 6, 8, 9, and 10, respondents argue that those claims, in their entirety, are procedurally defaulted.  However, the Nevada Supreme Court's July 10, 2010, order indicates that only ineffective assistance of counsel claims were procedurally barred.  There is no mention in the order of the Nevada Supreme Court that other sorts of claims asserted in Claims 1, 5, 6, 8, 9, and 10 were considered procedurally barred.

Second, in Claim 2 Echavarria claims:

> His death sentence is invalid under state and federal constitutional guarantees of due process, equal protection, the prohibition against double jeopardy, and a reliable sentence because the remaining aggravator, murder committed to avoid or prevent a lawful arrest, is invalid and cannot be used to support the death penalty.

Second Amended Petition, p. 53, lines 2-5.  In the July 20, 2010, order, the Nevada Supreme Court nowhere stated that any such claim was procedurally barred.   In the Nevada Supreme Court's order, the only discussion of this challenge by Echavarria to the preventing-a-lawful-arrest aggravator appears in footnote 5, at page 15.   There, the Nevada Supreme Court rejected the challenge to the preventing-a-lawful-arrest aggravator on the merits of that claim.  Order of Affirmance, Exhibit 6 to Motion to Vacate Stay and Reopen Capital Habeas Corpus Proceeding (dkt. no. 132-5, pp. 38-57, p. 15, footnote 5).   The Nevada Supreme Court's ruling on the challenge to the preventing-a-lawful-arrest aggravator was, in its entirety, as follows:

> One theory that the State pursued for first-degree murder was that Echavarria murdered Agent Bailey to prevent a lawful arrest or effectuate an escape. He argues that, as a result, the preventing-a-lawful-arrest aggravator based on the same conduct is invalid under *McConnell* because it fails to genuinely narrow the class of defendants eligible for the death penalty. However, this court rejected a similar challenge in *Blake v. State*, 121 Nev. 779, 121 P.3d 567, 577 (2005).  Therefore, the district court did not err by denying this claim.

///

16

*Id.* This discussion arose in the course of the cause and prejudice analysis of another claim, Echavarria's claim challenging the burglary and robbery felony-murder aggravators. *Id.* at 14-17. There is no indication in the order of the Nevada Supreme Court, however, that the court considered the challenge to the preventing-a-lawful-arrest aggravator to be procedurally barred. Claim 2 is not procedurally defaulted.

Third, respondents argue that Claim 15 of Echavarria's second amended petition is procedurally defaulted. *See* Motion to Dismiss, pp. 15-18. Claim 15, however, is a "cumulative error claim," stating, in its entirety, the following:

CLAIM FIFTEEN

Mr. Echavarria's conviction and death sentence are invalid under the [state and federal] constitutional guarantees of due process, equal protection, effective assistance of counsel, a fair tribunal, an impartial jury, and a reliable sentence due to the cumulative errors in the jury instructions, gross misconduct by government officials and witnesses, and the systematic deprivation of Mr. Echavarria's right to the effective assistance of counsel. U.S. Const. amends. V, VI, VIII, & XIV.

SUPPORTING FACTS

1. Each of the claims specified in this petition requires vacation of the conviction or sentence. Mr. Echavarria incorporates each and every factual allegation contained in this petition as if fully set forth herein.

2. The cumulative effect of the errors demonstrated in this petition deprived Mr. Echavarria of proceedings that were fundamentally fair and resulted in a constitutionally unreliable sentence. Whether or not any individual error requires the vacation of the judgment or sentence, the totality of these multiple errors and omissions resulted in substantial prejudice to Mr. Echavarria.

3. The State cannot show, beyond a reasonable doubt, that the cumulative effect of these numerous constitutional errors was harmless beyond a reasonable doubt; in the alternative, the totality of these constitutional violations substantially and injuriously affected the fairness of the proceedings and prejudiced Mr. Echavarria.

4. Mr. Echavarria is entitled to a new trial and a new sentencing proceeding.

5. Either the state should have produced or trial counsel should have discovered and presented all that undersigned counsel has presented here. Trial counsel were ineffective for not doing so. Mr. Echavarria's conviction and death sentence cannot be allowed to stand. Mr. Echavarria is entitled to relief in the form of a new trial and a new sentencing proceeding.

17

6.     State direct appeal counsel and state post-conviction counsel were likewise ineffective for failing to raise and litigate the above-referenced meritorious issues on direct appeal or in state post-conviction when Mr. Echavarria had a right to effective assistance of counsel. There is no reasonable strategy, designed to effectuate Mr. Echavarria's best interests, for the failures of trial direct appeal and post-conviction counsel. Mr. Echavarria was prejudiced as a result of counsels' failures and he is entitled to relief.

Second Amended Petition, pp. 133-34. Claim 15 simply incorporates the entire second amended petition and makes the unstartling assertion that the cumulative effect of any constitutional errors must be considered. The scope of Claim 15 naturally will be affected by the dismissal of other claims on the ground of procedural default, or any other ground; however, to the extent that any other of Echavarria's claims survive the motion to dismiss, Claim 15 is not procedurally defaulted and not subject to dismissal.

In sum, then, this Court determines that the ineffective assistance of counsel claims in Claims 1, 5, 6, 8, 9 and 10 were held by the Nevada Supreme Court to be procedurally barred, and are subject to the procedural default doctrine in this federal habeas action.

### C.     Independence

Under the procedural default doctrine, federal courts will not review a question of federal law previously decided by a state court if the state court's decision rests on a state law ground that is independent of federal law and adequate to support the judgment. *Coleman*, 501 U.S. at 729. A state procedural default is independent unless it appears "to rest primarily on federal law or appears to be interwoven with federal law." *Id.* at 734; *see also Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000). Also, if the state court's decision fails "to specify which claims were barred for which reasons," the ambiguity may serve to defeat the independence of the state procedural bar. *Valerio v. Crawford*, 306 F.3d 742, 775 (9th Cir. 2002); *Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir. 2003).

In response to the motion to dismiss, Echavarria asserts that "the procedural default rulings invoked by the state are not independent of federal law, because the

///

18

application of the default rules depended on the merits of the claims."  Opposition to Motion to Dismiss, p. 21, lines 10-12.  However, with respect to the ineffective assistance of counsel claims in Claims 1, 5, 6, 8, 9  and 10, Echavarria's argument in this regard is without merit.

In the Nevada Supreme Court's decision, there is no discussion at all of the merits of the ineffective assistance of counsel claim in Claim 6. *See* Order of Affirmance, Exhibit 6 to Motion to Vacate Stay and Reopen Capital Habeas Corpus Proceeding (dkt. no. 132-5, pp. 38-57).  The Court sees no basis at all for an assertion that the procedural bar of that claim was not independent of the merits of the claim.

Further, with respect to Claims 1, 5, 8, 9, and 10, in the decision of the Nevada Supreme Court, the discussion of the merits of those ineffective assistance of counsel claims concerned only the question whether Echavarria showed prejudice, as part of the cause and prejudice necessary to overcome the procedural bar of the claims.  *See id.* at 4-11.  When a state court determines that a state procedural bar applies, and then looks at the merits of the federal constitutional claim purely for the purpose of determining whether the petitioner can show cause and prejudice to overcome the procedural bar, the state court's application of the bar is not considered to be intertwined with the merits of the federal claim such as to deprive the state procedural bar of its independence.  *See Moran v. McDaniel*, 80 F.3d 1261, 1269 (9th Cir.1996).

### D.    Adequacy

A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default."  *Calderon v. United States Dist. Court* (*Bean*), 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted); *see also Ford v. Georgia*, 498 U.S. 411, 424 (1991) (State procedural rule adequate if "firmly established and regularly followed by the time as of which it is to be applied." (citation and internal quotation marks omitted)); *Lambright v. Stewart*, 241 F.3d 1201, 1203 (9th Cir.2001).

///

1    In *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals
2   announced a burden-shifting test for analyzing adequacy.   Under *Bennett*, the State
3   carries the initial burden of pleading "the existence of an independent and adequate state
4   procedural ground as an affirmative defense." *Id.* at 586.  The burden then shifts to the
5   petitioner "to place that defense in issue," which the petitioner may do "by asserting
6   specific factual allegations that demonstrate the inadequacy of the state procedure,
7   including citation to authority demonstrating inconsistent application of the rule." *Id.* If the
8   petitioner meets this burden, "the ultimate burden" of proving the adequacy of the
9   procedural rule rests with the State, which must demonstrate "that the state procedural
10  rule has been regularly and consistently applied in habeas actions."  *Id.*; *see also King v.*
11  *Lamarque*, 464 F.3d 963, 966-67 (9th Cir. 2006).

12    In this case, the respondents meet their initial burden under *Bennett* by asserting
13  that the Nevada Supreme Court's application of NRS §§ 34.726, 34.800 and 34.810 to
14  claims in Echavarria's second and third state-court habeas petitions constituted an
15  independent and adequate state procedural ground for denying relief.

16    In response, Echavarria challenges the adequacy of the Nevada procedural rules.

17    With respect to Echavarria's alleged procedural default under NRS § 34.810
18  (successive petitions), the Ninth Circuit Court of Appeals has held that statute to be
19  inadequate to support the procedural default defense in federal court. *Valerio v.*
20  *Crawford*, 306 F.3d 742, 777-78 (9th Cir. 2002).   Echavarria cites *Valerio* for that
21  proposition, and thereby satisfies his burden under *Bennett* regarding section 34.810.  In
22  reply, respondents argue that *Valerio* is no longer good law, in light of the Supreme
23  Court's holdings in *Walker v. Martin*, ___ U.S. ___, 131 S.Ct. 1120, 1130, 179 L.Ed.2d 62
24  (2011) (rule not automatically inadequate "upon a showing of seeming inconsistencies"
25  and that state court must be allowed discretion "to avoid the harsh results that sometimes
26  attend consistent application of an unyielding rule"), and *Beard v. Kindler*, 558 U.S. 53,
27  ___, 130 S.Ct. 612, 618, 175 L.Ed.2d 417 (2009) ("[A] discretionary rule can be 'firmly
28  established' and 'regularly followed' ─ even if the appropriate exercise of discretion may

permit consideration of a federal claim in some cases but not others.").  This Court does not agree, however, that *Walker* and *Kindler* necessarily undermine *Valerio*.  This Court follows *Valerio*, and does not impose a procedural default of any of Echavarria's claims based on NRS 34.810.

With respect to NRS §§ 34.726 and 34.800, however, the Ninth Circuit Court of Appeals has rejected the argument that the Nevada Supreme Court has inconsistently applied those procedural bars.  *See Loveland v. Hatcher*, 231 F.3d 640, 642-63 (9th Cir. 2000) (regarding NRS § 34.726, as of 1993); *Moran v. McDaniel*, 80 F.3d 1261, 1269-70 (9th Cir. 1996) (regarding NRS §§ 34.726 and 34.800, as of 1996).  The Ninth Circuit Court of Appeals has never ruled either NRS §§ 34.726 or 34.800 an inadequate state procedural bar.

Echavarria argues, though, that the NRS §§ 34.726 and 34.800 procedural bars are inadequate to bar federal review in his case.  He cites, primarily, *Middleton v. Warden*, 120 Nev. 664, 98 P.3d 694 (2004), and *Rippo v. State*, 122 Nev. 1086, 146 P.3d 279 (2006), as cases that he claims show that the Nevada courts do not consistently apply NRS §§ 34.726 and 34.800.

In *Middleton*, after finding that the petitioner's attorney had "repeatedly violated [the] court's orders and procedural deadlines" and submitted work product that was "wholly substandard and unacceptable," the Nevada Supreme Court remanded, ordering that the petitioner be given another opportunity to litigate his post-conviction petition with a new attorney.  *Middleton*, 98 P.3d at 696-98.  Echavarria appears to argue that, when the Nevada Supreme Court remanded in *Middleton*, it would have been too late, under NRS § 34.726, for the petitioner in that case to initiate a new state habeas action.  *See* Opposition to Motion to Dismiss, pp. 42-43.  But that argument is meritless; there was no applicable procedural bar in the case because the timely-initiated action was remanded, and there was no need to initiate a new action.

Echavarria argues that in *Rippo*, after any new claim was barred by NRS §§ 34.726 and 34.800, the Nevada Supreme Court *sua sponte* raised an issue regarding a

jury instruction concerning the consideration of mitigating circumstances, and invited briefing on the merits of that issue.  *See* Opposition to Motion to Dismiss, pp. 41-42; *see also* Exhibit 13 to Opposition to Motion to Dismiss (dkt. no. 153-2).  But in *Rippo* — as in *Middleton* — there was no discussion at all in the Nevada Supreme Court opinion about either NRS §§ 34.726 or 34.800, and there is no indication anywhere that either of those bars was considered to be even a potential issue.

Echavarria also cites the following cases, without any substantial discussion, as examples of cases in which, he believes, the Nevada courts addressed the merits of constitutional claims despite applicable procedural bars:  *Hill v. State*, 114 Nev. 169, 953 P.2d 1077 (1998); *Farmer v. State*, No. 29120, November 20, 1997 Order Dismissing Appeal, Exhibit 111 to Echavarria's First Amended Petition (dkt. no. 107-2, pp. 587-91); *Jones v. McDaniel*, No. 39091, December 19, 2002, Order of Affirmance, Exhibit 117 to Echavarria's First Amended Petition (dkt. no. 107-2, pp. 559-73); *Milligan v. Warden*, No. 37845, July 24, 2002 Order of Affirmance, Exhibit 123 to Echavarria's First Amended Petition (dkt. no. 107-2, pp. 522-40).  *See* Opposition to Motion to Dismiss, p. 43.  The Court, however, finds that these submissions by Echavarria do not remotely show NRS § 34.726 or § 34.800 to be other than clear, consistently applied, and well-established.

The Nevada courts' exercise of discretion in isolated cases does not necessarily render procedural rules inadequate to support the procedural default defense in federal court.  *See Walker*, 131 S.Ct. at 1130 (rule not automatically inadequate "upon a showing of seeming inconsistencies" and state court must be allowed discretion "to avoid the harsh results that sometimes attend consistent application of an unyielding rule"); *see also Beard*, 130 S.Ct. at 618 ("[A] discretionary rule can be 'firmly established' and 'regularly followed' — even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others.").

The Court determines that Echavarria has not met his burden under *Bennett*, to assert specific factual allegations demonstrating the inadequacy of the state procedural rules in NRS § 34.726 and  § 34.800.

1    In his motion for evidentiary hearing, Echavarria requests an evidentiary hearing

2   "on the adequacy of the procedural bars asserted by the State." Motion for an Evidentiary

3   Hearing (dkt. no. 158, p. 7, lines 7-8).   The Court determines, however, that an

4   evidentiary hearing is not warranted on the issue of adequacy, as Echavarria has not met

5   his burden under *Bennett*.   The Court, therefore, declines to grant Echavarria an

6   evidentiary hearing on the issue of adequacy of the state procedural rules.

7    NRS § 34.726 and § 34.800 are adequate to support the procedural default

8   defense asserted by respondents.

9    **E.    Cause and Prejudice**

10    Echavarria asserts that he can show cause and prejudice with respect to his

11   procedural default, such that federal habeas litigation of his claims should not be barred

12   by the procedural default doctrine.  Opposition to Motion to Dismiss, pp. 23-38.

13    To demonstrate cause for a procedural default, the petitioner must "show that

14   some objective factor external to the defense impeded" his efforts to comply with the

15   state procedural rule.  *Murray*, 477 U.S. at 488.

16    Echavarria, relying upon *Martinez v. Ryan*, ___ U.S. ___, 132 S.Ct. 1309, 182

17   L.Ed.2d 272 (2012), points to alleged ineffective assistance of counsel in his first state-

18   court habeas action, as the cause of his procedural default.  Opposition to Motion to

19   Dismiss, pp. 23-38.

20    In *Martinez*, the Supreme Court noted that it had previously held, in *Coleman v.*

21   *Thompson*, 501 U.S. 722, 746–47 (1991), that "an attorney's negligence in a

22   postconviction proceeding does not establish cause" to excuse procedural default.

23   *Martinez*, 132 S.Ct. at 1319. The court in *Martinez* then "qualif[ied] *Coleman* by

24   recognizing a narrow exception:   inadequate assistance of counsel at initial-review

25   collateral proceedings may establish cause for a prisoner's procedural default of a claim

26   of ineffective assistance at trial." *Id.* at 1315. The court described "initial-review collateral

27   proceedings" as "collateral proceedings which provide the first occasion to raise a claim

28   of ineffective assistance at trial."  *Id.*

Respondents argue that *Martinez* does not apply to ineffective assistance of counsel claims in Nevada, because, while state-court habeas petitions are the preferred and most common vehicle for raising such claims (*see Pellegrini v. Nevada*, 177 Nev. 860, 883, 34 P.3d 519, 534 (2001)), they are not the exclusive vehicle in Nevada. Respondents point out that, in Nevada, claims of ineffective assistance of counsel may be raised on direct appeal where "there has already been an evidentiary hearing or where an evidentiary hearing would be unnecessary." *Id.*, citing *Feazell v. State*, 111 Nev. 1446, 1449, 906 P.2d 727, 729 (1995), and *Mazzan v. State*, 100 Nev. 74, 80, 675 P.2d 409, 413 (1984); *see also* Reply in Support of Motion to Dismiss, pp. 20-22 (dkt. no. 166). However, while respondents point out that some claims of ineffective assistance of counsel can possibly be raised on direct appeal in Nevada, respondents do not show that any of Echavarria's defaulted claims could have been. With respect to the claims at issue here – the ineffective assistance of counsel claims in Claims 1, 5, 6, 8, 9, and 10 of Echavarria's second amended habeas petition – Echavarria's first state-court habeas action was an initial-review collateral proceeding within the meaning of *Martinez.*

Respondents also argue that the sort of showing of cause allowed by *Martinez* is not available to Echavarria because Echavarria's claims of ineffective assistance of his post-conviction counsel are, themselves, procedurally defaulted. *See* Reply in Support of Motion to Dismiss, pp. 23-24 (dkt. no. 166). Respondents cite *Edwards v. Carpenter*, 529 U.S. 447 (2000), for the proposition that "a petitioner cannot present a claim of ineffective assistance of counsel for the purpose of establishing cause to overcome a procedural default if the ineffective assistance of counsel claim is itself procedurally defaulted." Reply in Support of Motion to Dismiss, p. 23 (dkt. no. 166). The holding in *Martinez,* however, was based in equity, on the discretion of the federal courts in applying the procedural default doctrine, and the Court held that the sort of ineffective assistance of counsel that may function as cause for a procedural default need not be a viable freestanding constitutional claim in its own right. *See Martinez,* 132 S.Ct. at 1315-19. There is no language in *Martinez* indicating that ineffective assistance of post-conviction

counsel may only function as cause if the claim of ineffective assistance of post-conviction counsel, itself, is not procedurally defaulted.  *See Dickens v. Ryan,* 688 F.3d 1054 (9th Cir. 2012) (holding that there is no requirement that a claim of ineffective assistance of post-conviction counsel must be exhausted in state court before it may be asserted as cause for the procedural default of an ineffective assistance of trial counsel claim).

Nonetheless, the Court does not find Echavarria's assertion of ineffective assistance of his counsel in his first state habeas action as cause for his procedural default to be compelling.  In *Martinez*, the petitioner's procedural default in his state post-conviction proceedings was based on an Arizona rule barring successive petitions; the petitioner's procedural default was complete when counsel in the initial-review collateral proceeding failed to raise certain claims in that state-court proceeding.  *See Martinez*, 132 S.Ct. at 1314.  The procedural default at issue in this case is different.  Echavarria's procedural default was based on the statute of limitations in NRS § 34.726 and the laches rule in NRS § 34.800.[4] The procedural default occurred because Echavarria delayed for more than 13 years, after his direct appeal ended in January 1994, before he initiated his second state habeas action in May 2007, and his third in May 2008.  *See* Order of Affirmance, Exhibit 6 to Motion to Vacate Stay and Reopen Capital Habeas Corpus Proceeding (dkt. no. 132-5, pp. 38-57, p. 2).  The counsel who represented Echavarria in his first state habeas action represented Echavarria for only a relatively small portion of the time during which the default occurred.  Ineffective assistance of Echavarria's first state post-conviction counsel did not necessarily prevent Echavarria from complying with NRS § 34.726 and NRS § 34.800 with regard to the ineffective assistance of counsel claims in Claims 1, 5, 6, 8, 9, and 10 of his second amended habeas petition.  In fact, in affirming the dismissal of Echavarria's procedurally barred

---

[4]The procedural bar in state court was also based on NRS § 34.810, but, as is discussed above, this Court does not rely on the procedural bar under section 34.810 in applying the procedural default doctrine, as it is not adequate.

claims, the Nevada Supreme Court relied on the 11-year delay, by Echavarria's second state post-conviction counsel, in claiming ineffective assistance on the part of his first state post-conviction counsel.  *See id.* at 4 ("Echavarria waited 11 years after this court resolved his appeal from the denial of his first post-conviction petition to challenge post-conviction counsel's ineffectiveness.  Other than his misinterpretation of *Crump* [*v. Warden*, 113 Nev. 293, 934 P.2d 247 (1997)], Echavarria offers no explanation for the delay.").  In short, there is an insufficient causal connection between the alleged ineffective assistance of Echavarria's first post-conviction counsel and the procedural defaults at issue.

Echavarria requests an evidentiary hearing "on the issue of cause and prejudice." Motion for an Evidentiary Hearing (dkt. no. 158, p. 4, lines 12-13).  However, because Echavarria's assertion of cause for the procedural default fails, fundamentally, as the result of an insufficient causal nexus between the performance of his first post-conviction counsel and his procedural defaults, an evidentiary hearing is not warranted on the issue of cause and prejudice.  The Court, therefore, declines to grant Echavarria an evidentiary hearing on the issue of cause and prejudice.

The ineffective assistance of counsel claims in Claims 1, 5, 6, 8, 9 and 10 of Echavarria's second amended habeas petition are barred from litigation in this federal habeas action by the procedural default doctrine, and shall be dismissed on that ground.[5]

## VI.    CONCLUSION

IT IS THEREFORE ORDERED that respondents' Motion to Dismiss (dkt. no. 145) is GRANTED IN PART AND DENIED IN PART.  The following claims in petitioner's second amended habeas corpus petition (dkt. no. 136) are dismissed:  Claims 1, 5, 6, 8, 10, 13, 14, and the claims of ineffective assistance of counsel in Claim 9.  In all other respects the motion to dismiss is DENIED.

---

[5]Claims 1, 5, 6, 8, and 10 are also subject to dismissal on statute of limitations grounds, as is discussed above.  With respect to those claims, the procedural default is an alternative and additional ground for dismissal.

1    IT IS FURTHER ORDERED that petitioner's Motion for Leave to Conduct

2  Discovery (dkt. no. 157) is DENIED.

3    IT IS FURTHER ORDERED that petitioner's Motion for an Evidentiary Hearing

4  (dkt. no. 158) is DENIED.

5    IT IS FURTHER ORDERED that respondents shall file an answer, responding to

6  the remaining claims in petitioner's second amended habeas corpus petition (dkt. no.

7  136) within ninety (90) days from the entry of this order.

8

9    DATED THIS  20th day of March 2013.

10

11    _____

12    MIRANDA M. DU
      UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28